UNITED STATES of America, Plaintiff–Appellee,

v.

Emil K. SCHANDL, Defendant–Appellant.

No. 90–5179.

United States Court of Appeals, Eleventh Circuit.

Nov. 20, 1991.

---

Emil K. Schandl, pro se.

William A. Cohan, Encinitas, Cal., for defendant-appellant.

Dexter Lehtinen, U.S. Atty., Miami, Fla., Robert E. Lindsay, Brett Dignam, Alan Hechtkopf, Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before FAY, Circuit Judge, JOHNSON *, Senior Circuit Judge, and MERHIGE **, Senior District Judge.

FAY, Circuit Judge:

Defendant-appellant, Emil K. Schandl, was convicted of four counts of tax evasion in violation of 26 U.S.C. § 7201 and one count of failure to file a tax return in violation of 26 U.S.C. § 7203. On appeal, Schandl seeks reversal of his conviction on the grounds that the district court wrongly denied two motions: (1) a motion to suppress evidence seized at Schandl's home and office; and (2) a motion requesting early release of jury panel information needed to access certain tax background information of potential jurors under 26 U.S.C. § 6103(h)(5). We find no error with regard to the district court's ruling on Schandl's motion to suppress. Furthermore, although we find that the district court failed to comply with 26 U.S.C. § 6103(h)(5) by denying Schandl's motion for early access to jury panel information, this failure did not prejudice Schandl. We, therefore, AFFIRM.

---

* See Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Robert R. Merhige, Jr., Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation.

## BACKGROUND

In April 1989, Emil K. Schandl was indicted on five counts of tax evasion in violation of 26 U.S.C. § 7201 for the calendar years 1981, 1982, 1983, 1984, and 1985. Much of the evidence to support this indictment came from a 1986 search of Schandl's home and office, for which warrants were obtained. During the course of the search, Special Agents for the Internal Revenue Service (IRS) leafed through Schandl's personal love letters, seized documents concerning his son's rhinoplasty, a computer disc containing a bible home study course, a rolodex, a box of letters from his mother and father, tax protester manuals and other personal items. Schandl filed a motion to suppress the evidence seized arguing that the agents exceeded the scope of their warrants. The district court referred the motion to Magistrate Judge Ann E. Vitunac who held an evidentiary hearing on the matter and issued a report and recommendation. The recommendation which concluded that Schandl's motion to suppress should be denied was affirmed and adopted by the district court.

More than three months before the trial began, Schandl filed a motion for an order directing the jury clerk to turn over the names, addresses and Social Security numbers of the jury panelists at his trial. Schandl's motion clearly stated that the requested jury panel information was necessary to obtain certain tax information from the Secretary of the Treasury pursuant to 26 U.S.C. § 6103(h)(5). The district court denied the motion.

During voir dire, the district court judge asked all jury panelists whether they had ever been the subject of an audit by the IRS. An affirmative response to this question led to more questioning by the court and, often, to extensive questioning by the government's attorney.[1] The court also asked whether the nature of the charges would cause any of the panelists to believe that they could not be fair jurors.[2] And government attorneys asked whether any of the panelists had relatives, friends, or business associates who had had dealings with the IRS which were not resolved to their satisfaction. In addition, counsel for both parties were given fifteen minutes of unrestricted voir dire with each group of prospective jurors.

At the conclusion of Schandl's jury trial, he was found guilty of tax evasion for the years 1982 (Count II), 1983 (Count III), 1984 (Count IV), and 1985 (Count V). The jury determined that Schandl was not guilty of tax evasion for 1981 (Count I), but was instead guilty of the lesser included offense of willful failure to file a tax return in violation of 26 U.S.C. § 7203. Schandl was sentenced to one year of incarceration for Count I and four years each on Counts II, III, IV, and V, to run concurrently. He was also ordered to pay a $100 assessment and taxed the costs of the prosecution in the amount of $2,340. Schandl brings this appeal.

1. Typical of the kind of questioning that took place is this exchange between the court and one panelist who worked as an accountant:
   THE COURT: Having heard the questions here this morning, is there anything about you, your background, your family, or any experience you might have had with the I.R.S. or accounting, that you think might be of interest to the litigants concerning your qualifications?
   [PANELIST]: Well, I have been audited.
   THE COURT: When was the last time?
   [PANELIST]: '83.
   THE COURT: Was this the first time or the last time?
   [PANELIST]: That was the last time.
   THE COURT: How many times were you audited?
   [PANELIST]: FOUR.

(2d Supp.R. at 63–64). The government's attorney continued the questioning:
   [ATTORNEY]: You said that you were audited four times. What was the problem?
   [PANELIST]: Wasn't really a problem—well, it was a problem with the deduction that was legal and I claimed, and we came to a very amicable settlement on it.
   [ATTORNEY]: All four occasions?
   [PANELIST]: Yes, just small items.
   [ATTORNEY]: Were you treated fairly, did you feel?
   [PANELIST]: Absolutely.
(2d Supp.R. at 69).

2. An affirmative response to this question led to the "for cause" removal of one juror who said that a previous IRS audit had left a "bad taste in [his] mouth." (2d Supp.R. at 47).

## DISCUSSION

Schandl raises two issues on appeal: (1) whether the district court erred in adopting the magistrate judge's recommendation that Schandl's motion to suppress evidence seized in the search of his home and office be denied; and (2) whether the district court erred in denying Schandl's motion for jury panel information to allow him the opportunity to request IRS data regarding prospective jurors under 26 U.S.C. § 6103(h)(5).

### Motion To Suppress

Pointing to the fact that agents read love letters and seized personal documents, some of which were not relevant to these proceedings, Schandl contends that agents went on a "malicious, voyeuristic, and self-indulgent rummaging" in their search of his home and office that went far beyond the scope of the warrants. He asks that we reverse the district court's decision to accept and affirm the magistrate judge's recommendation to deny his motion to suppress evidence seized in that search.

In her recommendation to the district court, Magistrate Judge Vitunac concluded that the agents involved in the search made a good faith effort to stay within the confines of the search warrants which authorized them to seize:

> [A]ll books, documents, receipts, notes, journals, contracts, agreements, ledgers or other records including originals of all information stored on computer magnetic tapes, computer discs, and/or any other computer memory storage devices, plus computer mainframe which operates the memory storage devices relating to any financial transactions of Dr. Schandl, CA Laboratory, Center for Metabolic Disorders, Center for Metabolic Disorders, Inc., and/or Research Enterprises, which are fruits, evidence, or instrumentalities of criminal offenses against the United States namely, attempts to evade or defeat Federal income taxes and failure to file.

Report and Recommendation of July 20, 1989, at 3. This finding was "based on the nature of the allegations against the Defendant, the nature of the evidence searched for and the knowledge that the agents had that the Defendant read and subscribed to articles on how to hide one's assets from the I.R.S." *Id.* at 4. The magistrate judge also noted that all irrelevant items seized in the search were returned to Schandl.

The recommendation of the magistrate judge is consistent with law in this area. The seizure of items not covered by a warrant does not automatically invalidate an otherwise valid search. *United States v. Henson,* 848 F.2d 1374, 1383 (6th Cir. 1988) (Agents did not exceed the scope of the warrant in a mail fraud conspiracy case despite the fact that such items as "office supplies, blank paper, horse records, divorce records, and personal income tax records" were seized.), *cert. denied,* 488 U.S. 1005, 109 S.Ct. 784, 102 L.Ed.2d 776 (1989). "This is especially true where the extra-warrant items were not received into evidence against the defendant." *Id.* The crucial inquiry is always "whether the search and seizures were reasonable under all the circumstances." *United States v. Wuagneux,* 683 F.2d 1343, 1352 (11th Cir. 1982), *cert. denied,* 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983); *see also United States v. Heldt,* 668 F.2d 1238, 1254 (D.C.Cir.1981), *cert. denied,* 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982). Such things as the scope of the warrant, the behavior of the searching agents, the conditions under which the search was conducted, and the nature of the evidence being sought must be considered in determining whether or not the search was reasonable. *Heldt,* 668 F.2d at 1254.

In this case, the vast majority of the documents seized were within the scope of the warrants. It was inevitable that some irrelevant materials would be seized as agents searched through numerous documents for evidence of tax evasion and failure to file, crimes that are generally only detected through the careful analysis and synthesis of a large number of documents.[3] Indeed, it might have been far

---

**3.** Ten agents were needed to conduct the search which took a full day.

more disruptive had the agents made a thorough search of each individual document and computer disc before removing it from Schandl's home and office. To insist on such a practice " 'would substantially increase the time required to conduct the search, thereby aggravating the intrusiveness of the search.' " *Wuagneux,* 683 F.2d at 1353 (quoting *United States v. Beusch,* 596 F.2d 871, 876–77 (9th Cir.1979)). We therefore hold that the district court did not err in adopting and affirming the magistrate judge's recommendation to deny Schandl's motion to suppress.

*Motion For Jury Panel Information— § 6103(h)(5)*

Schandl's motion for jury panel information was based on 26 U.S.C. § 6103(h)(5), which gives both the government and taxpayer in civil and criminal tax cases the right to request from the Secretary of the Treasury, in writing, very basic tax background information about potential jurors. This information is limited to a yes or no response to the question of whether or not the potential juror has ever been audited or investigated by the IRS.[4]

Schandl argues that in order for the information regarding potential jurors to be useful to him, he must have access to it during voir dire. This means, then, that the names, addresses, and Social Security numbers of potential jurors must be made available to him as soon as the jury list is drawn so that he can write to the Secretary of the Treasury and receive a reply in time for the start of trial. By denying his request for early release of the jury panel information, Schandl points out that the district court effectively denied him the ability to exercise his § 6103(h)(5) rights. We agree.

Though the legislative history is sparse, it appears that Congress intended § 6103(h)(5) to codify the government's practice of discovering whether a prospective juror had ever been the subject of an IRS tax audit. *See* Treas.Reg. § 301.-6103(a)–1(h) (1973) (as amended by T.D. 7266, 1973–1 C.B. 593) (permitting IRS to respond to inquiries "from Department of Justice, as to whether a prospective juror has, or has not, been investigated by the Internal Revenue Service" but forbidding IRS from making tax returns available to Department of Justice for use in examining prospective jurors). The obvious purpose of the practice was, and still is, to enable the government to question those potential jurors who were audited to determine whether they harbor any resentment toward the IRS which might affect their ability to be unbiased decisionmakers. Concern over the fact that the release of such information was an unwarranted invasion of the potential juror's privacy as well as the fact that the information was not available to taxpayers, S.Doc. No. 266, 94th Cong., 2d Sess. 951–52 (1975),[5] led Congress to add provisions limiting the extent of the information to be made available and permitting access to taxpayers.[6] It was Congress's intent, then, through § 6103(h)(5), to provide both the government and taxpayers in civil and criminal tax cases with a useful tool to gather infor-

---

**4.** 26 U.S.C. § 6103(h)(5) provides:

**(5) Prospective jurors**

In connection with any judicial proceeding described in paragraph (4) to which the United States is a party, the Secretary shall respond to a written inquiry from an attorney of the Department of Justice (including a United States attorney) involved in such proceeding or any person (or his legal representative) who is a party to such proceeding as to whether an individual who is a prospective juror in such proceeding has or has not been the subject of any audit or other tax investigation by the Internal Revenue Service. The Secretary shall limit such response to an affirmative or negative reply to such inquiry.

**5.** The release of juror tax return information was opposed by the Administrative Conference and the Privacy Protection Study Commission. *See* Hearing on the Confidentiality of Tax Return Information before the House Committee on Ways and Means, 94th Cong., 2nd Sess. 157 (1976); Report of the Privacy Protection Study Commission, *Federal Tax Return Confidentiality* 37 (1976).

**6.** Section 6103(h)(5) was added to the Internal Revenue Code by the Tax Reform Act of 1976, Pub.L. No. 94–455, 90 Stat. 1520 (1976).

mation to be used in the jury selection process.

Both the statute and the legislative history are silent on the issue of the proper procedure to be used in obtaining § 6103(h)(5) information. The government contends that early release of jury panel information is not the proper procedure, not only because the statute does not mention early release, but also because such a procedure could lead to trial delay as attorneys seek continuances until the Secretary of the Treasury can respond to their requests. Instead, the government suggests that the parties must wait until the jury panel information is released in the normal course of events, which in this case apparently means the first day of trial.

■ While we share the concern of the government with regards to the administrative burden that § 6103(h)(5) could conceivably create, the only way to carry out the intent of the statute as a useful voir dire tool is to allow early access to jury panel information. Indeed, it appears to be the only way to permit parties to exercise their rights under the statute and, at the same time, avoid long delays at trial. *See United States v. Hashimoto*, 878 F.2d 1126, 1130 (9th Cir.1989) ("§ 6103(h)(5) appears to envision that the defendant will have to make a special request for early release of the jury list."). Even the First Circuit, which has held that the defendant has no right to early release of jury panel information, finds that early release is sometimes appropriate, presumably when made well in advance of trial. *United States v. Lussier*, 929 F.2d 25, 30 (1st Cir. 1991) ("[W]e encourage the district court to take reasonable and feasible steps to enable a defendant, who makes *a clear and timely request*, to procure § 6103(h)(5) information prior to the swearing of the jury. But we do not lay down a hard and fast rule." (Emphasis added.)). Therefore, we hold that the district court erred by denying Schandl's motion for a court order releasing the jury panel information necessary to permit him to take advantage of his rights under § 6103(h)(5).

The next issue we must consider is whether the district court's denial of Schandl's motion for release of jury panel information constituted reversible error. Schandl argues that this court should adopt the Ninth Circuit's opinions in *United States v. Hashimoto*, 878 F.2d 1126 (9th Cir.1989), and *United States v. Sinigaglio*, 942 F.2d 581 (9th Cir.1991), and reverse his conviction.

*Hashimoto* was the first case to consider the impact of 26 U.S.C. § 6103(h)(5) on courtroom procedures. Following a jury trial, Daniel T. Hashimoto was convicted of failure to file an income tax return. Several months before trial, Hashimoto filed a motion requesting that the court order the jury clerk to disclose the jury panel list pursuant to 26 U.S.C. § 6103(h)(5). The motion was denied. During voir dire at Hashimoto's trial, jury panelists were never asked whether or not they had been audited. On appeal, the Ninth Circuit reversed Hashimoto's conviction holding that the denial of Hashimoto's motion was error.

The court considered two standards for determining whether such error requires reversal. First, pointing out that Congress may have intended to create an unqualified right to the tax information, the court considered a per se rule of reversal. Under this standard, any time the trial court deprives a defendant of his right to information under § 6103(h)(5) the appellate court must reverse. Next, comparing the information obtained under § 6103(h)(5) to the information obtained in the voir dire process, the court considered the standard used to evaluate whether a trial court's restrictions on voir dire require reversal. Under this standard, the denial of § 6103(h)(5) information raises a "a presumption that there was a 'significant risk of prejudice'" *Hashimoto*, 878 F.2d at 1134 (quoting *United States v. Patterson*, 648 F.2d 625, 630 (9th Cir.1981)), which requires reversal unless negated by the appropriate line of questioning during voir dire. *Hashimoto*, 878 F.2d at 1133–34. Without deciding which standard to apply, the court reasoned that even under the lesser, presumption of prejudice, standard,

the prejudice created by the trial court's failure to provide Hashimoto access to § 6103(h)(5) information was not cured because the questions posed during voir dire "left completely unexplored the subject of the prospective jurors' attitudes and dealings with the IRS." *Id.* at 1134 n. 9.[7]

While the court in *Hashimoto* opened the door to the possibility that the denial of § 6103(h)(5) information could be cured by sufficient questioning during voir dire, the Ninth Circuit's most recent statement on the subject seems to have closed it. In *Sinigaglio*, Bruno F. Sinigaglio was convicted of failure to file a tax return. Sinigaglio motioned the court for early release of the prospective jury list and, shortly before trial, received from government attorneys an incomplete audit history of prospective jurors. Sinigaglio then moved for a continuance. The district judge denied Sinigaglio's motion and proceeded with the trial asking all prospective jurors during voir dire whether any of them had ever been audited, had any disputes with the IRS other than a formal or informal audit, or had any relatives, friends, or business associates who had any contact with the IRS. On appeal, the Ninth Circuit, in a two-to-one decision, held that the district court committed reversible error by denying the defendant's request for a continuance. Ruling out a per se rule of reversal and applying instead the prejudice standard outlined in *Hashimoto*, the court found that the trial judge's questions during voir dire did not cure the prejudice created by the incomplete audit history information given to the defendant.

Judge Brunetti, dissenting in *Sinigaglio*, questioned the wisdom of the majority's ruling from an administrative standpoint, noting that the district court judge had elicited from the jury panelists the same information that attorneys would have had

access to under § 6103(h)(5). Judge Brunetti wrote:

> If the questions asked of the *Sinigaglio* veniremen were insufficient, however, district courts will be hard pressed to develop questions that will meet with this court's satisfaction. Though the majority states that it does not apply a per se rule of reversal, its practical effect is just that. District courts will undoubtedly feel compelled to dismiss charges or require unnecessary and costly, if not impossible, discovery rather than attempt to discern what possible questions this court would find acceptable. I do not believe Congress in passing this statute intended to effectively eliminate the court's power to discover bias during voir dire when this statute applies.

*United States v. Sinigaglio*, 942 F.2d at 585 (Brunetti, J., dissenting). Judge Brunetti further pointed out that the majority's opinion in *Sinigaglio* is not only a departure from *Hashimoto*, it is also inconsistent with the Fifth Circuit's opinion in *United States v. Masat*, 896 F.2d 88 (5th Cir. 1990), which used *Hashimoto* as a guide.

In *Masat*, after jury trial, the defendant, Kenneth Masat, was convicted of tax evasion. Before trial, Masat requested the tax audit histories of potential jurors pursuant to 26 U.S.C. § 6103(h)(5) but received only partial information. Masat requested a continuance, but this was denied. During voir dire, the district judge asked the jury panel as a whole whether anyone had been the subject of a controversy with the IRS. Citing *Hashimoto*, the Fifth Circuit held on appeal that the trial court's denial of Masat's motion for a continuance was error. Again citing *Hashimoto* and applying a prejudice standard, the court held that this error was made harmless by the trial judge's questioning of the jury panel dur-

---

7. The dissent in *Hashimoto* agreed with the majority in its finding that the trial court erred by denying the defendant's request for early release of jury panel information, but departed from the majority on the issue of reversible error finding that Hashimoto was not prejudiced by the court's failure to provide him adequate access to § 6103(h)(5) information. The dissent argued that answers to general questions during

voir dire such as, "Do you know of any reason why you may be prejudiced for or against the Government or this Defendant because of the nature of the charges?" *Hashimoto*, 878 F.2d at 1136 (Wiggins, J., dissenting), encompassed the notion that a juror might feel some bias as a result of an IRS audit and were, therefore, sufficient replacements for the information Hashimoto would have received under § 6103(h)(5).

ing voir dire which elicited the same information contemplated by § 6103(h)(5). *Masat*, 896 F.2d at 95.

■ We choose to follow the Fifth Circuit's approach. Employing the *Hashimoto* court's comparison of the information obtained in voir dire and that provided by § 6103(h)(5), we hold that a presumption of prejudice requiring reversal is created when a party is denied access to § 6103(h)(5) information. This presumption may be overcome where voir dire questioning elicits information similar to that accessible under § 6103(h)(5). Our decision today is intended to do two things: (1) ensure that all timely requests for jury panel information pursuant to § 6103(h)(5) will be honored by the district court; and (2) provide the district court with the tools necessary to guarantee a fair trial where a party cannot access the information under the statute prior to voir dire.[8]

■ In this case, because jury panelists were asked whether or not they had ever been audited, whether the nature of the charges would lead them to be biased in any way, and whether they had relatives, friends, or business associates who had had dealings with the IRS, the presumption of prejudice created by the district court's denial of Schandl's motion for early access to jury panel information was sufficiently overcome.

**8.** Our holding is supported by the Sixth Circuit's opinion in *United States v. Spine*, 945 F.2d 143 (6th Cir.1991). Following a jury trial, Salvatore Spine was found guilty of tax evasion. Prior to trial, Spine wrote to the IRS, pursuant to § 6103(h)(5), requesting tax background information on potential jurors dating back to 1964. The IRS was able to provide Spine with information dating back only six years. Information dating back farther, Spine was told, would take longer to retrieve and would not be available for the scheduled start of trial. Unable to attain all the information requested, several days before trial Spine motioned for a continuance. The district court denied Spine's motion and instead conducted an "extensive voir dire" in which the court:

> distributed a confidential questionnaire to each potential juror asking if they had "ever been audited, investigated or had any disagreement with the IRS or any other taxing authority" ... individually questioned, in the

## CONCLUSION

For the foregoing reasons, we AFFIRM Schandl's conviction for tax evasion and failure to file a tax return.

presence of counsel, any juror who answered "yes" to this question ... conducted a general voir dire of the entire jury pool in which it asked whether the prospective jurors could be fair and impartial to the defendant. *Id.* at 148.

On appeal, the Sixth Circuit, taking into account "other competing considerations, such as a district court's authority to control its docket and the public's interest in prompt and efficient administration of justice," *Id.* at 148, upheld the district court's decision to deny Spine's motion for a continuance in light of its extensive voir dire. The Sixth Circuit held that § 6103(h)(5) requires a "reasonable period of time in which to permit the IRS to conduct a search of its records for potential jurors' tax histories." *Id.* If the search cannot be carried out within a reasonable time period, "the district court can proceed to trial without running afoul of § 6103(h)(5) by ascertaining such information through voir dire." *Id.*