KRAVITCH, Circuit Judge:
 

 In a twelve count indictment Daniel Jay Callahan (“Callahan”) was charged with federal income tax evasion, willful failure to file tax returns, obstruction of justice and perjury before the federal grand jury.
 
 [1]
 
 On appeal Callahan argues that his conviction should be overturned because the district court failed to release the jury lists in a timely fashion as required by 26 U.S.C. § 6103(h)(5). He also claims that the evidence was not sufficient to sustain the guilty verdict on the perjury counts and challenges the district court’s decision to depart upward under the Sentencing Guidelines for obstruction of justice pursuant to U.S.S.G. § 8C1.1.
 

 We hold that the district court failed to comply with 26 U.S.C. § 6103(h)(5) by denying Callahan’s motion for early access to jury panel information, but that this failure did not prejudice Callahan. Further, we conclude that the evidence was sufficient to support Callahan’s conviction on the perjury counts and that the district court did not err in departing upward for obstruction of justice in computing Callahan’s sentence. Accordingly, we AFFIRM.
 

 I.
 

 Callahan owned and operated his own business as a painting contractor under various trade names. Until 1981, Callahan operated his business under the name “Dan Callahan Painting Contractor.” He filed no income tax returns from 1973 to 1985. In 1981, tax deficiency assessments were issued against him by the IRS amounting to over $32,000 for 1973 and $8,900 for 1974. Shortly thereafter, Callahan ceased doing most of his business under “Dan Callahan Painting Contractor” and began using the name “Spray-Away.” He opened a bank account with a false name and a false social security number for “Spray-Away.” His main client, WG-Development Company (later known as Sun-mark Communities Corporation), paid Callahan by writing checks to “Spray-Away.” Callahan continued to use “Dan Callahan Painting Contractor” to bill customers of whom the IRS was unaware.
 

 After Callahan learned that the government knew of his use of the “Spray-Away” trade name, Callahan opened another bank account in a different bank in the name of “Confederated Enterprises, Inc.” using his step-daughter and a friend as the authorized signatories. He procured a signature stamp from M & M Printing Company containing these two authorized signatures; this stamp allowed him to exercise control over the account without appearing to be connected to it.
 

 Callahan deposited more than $32,000 in the “Confederated Enterprises” account, ninety-eight percent of which was subsequently disbursed to defendant or his main suppliers and advertisers. No disbursements were made to any of the four corporate officers listed in state records.
 

 The grand jury was convened in December 1989 to investigate whether Callahan had violated any criminal laws relating to tax evasion. Callahan testified before the grand jury regarding his connection with “Spray-Away” and “Confederated Enterprises,” his knowledge of their purposes and whether he received any income from them. Callahan testified that his connection to “Confederated Enterprises” was minimal, that he had merely assisted some friends in starting up the business. He also claimed to not remember whether he received any income from either “Confederated” or “Spray-Away.”
 

 
 *494
 
 After Callahan was indicted by the grand jury on April 4, 1990, and during reciprocal discovery, Callahan presented to the IRS a document that he claimed was a January 1, 1985, agreement between the alleged owners of “Confederated” and himself. The substance of the agreement purported to demonstrate that the corporation had agreed to compensate Callahan for his services, thus supporting Callahan’s theory of defense. The document had affixed to it the stamped signatures of the two officers of the company. The government introduced this document at trial, however, because it was able to show that Callahan had procured the signature stamp on February 8, 1985,
 
 after
 
 the date of the agreement. This showed that the document was not what Callahan claimed it to be.
 

 Two months before his trial was to begin, Callahan filed a motion for timely release of the jury list pursuant to 26 U.S.C. § 6103(h)(5).
 
 [2]
 
 Initially, the United States Magistrate Judge granted Callahan’s motion and ordered a release of the jury list. When Callahan did not receive the list, he filed a motion for a continuance of the trial. In response to Callahan’s motion, the government asked the Magistrate to reconsider her original ruling granting the release. On August 1, 1990, the Magistrate issued her final order, denying Callahan access to the jury panel list until the day of trial. The district judge affirmed that order.
 
 [3]
 

 At the commencement of the trial, Callahan was given access to the jury panel list and given the opportunity to complete his request with the Secretary of the Treasury, which he attempted to do by fax machine that day. The district court provided Callahan the opportunity during voir dire to question the jurors regarding their past involvement with the IRS. Callahan declined to question the jurors. The trial court, however, did conduct a voir dire examination of the jurors in which it asked whether any of the jurors or their immediate family had ever been the subject of an audit, and if so, whether the matter was resolved or pending. The court also inquired as to whether any encounter with the IRS had left the jurors with a bad feeling toward the IRS.
 

 After an eight day trial, Callahan was convicted on all twelve counts. The district court sentenced Callahan to eighteen months incarceration on Counts One through Four and Eight through Twelve. On Counts Five through Seven, Callahan was sentenced to one year for each count. All of the terms were to be served concurrently. Callahan’s incarceration is to be followed by three years of supervised release.
 
 [4]
 

 II.
 

 Callahan argues that under 26 U.S.C. § 6103(h)(5) he was entitled to receive the jury panel list before the trial so that he could seek information from the Secretary of the Treasury as to whether any of the potential jurors had been the subject of an audit by the IRS. Granting him access to the juror list before the trial began, Callahan asserts, would have enabled him to conduct a meaningful voir dire
 
 *495
 
 of the potential jurors. Thereafter, he could have used his peremptory challenges more effectively.
 

 The statutory language of § 6103(h)(5) “does not itself describe the procedures to be followed.... Therefore, any judgment concerning the proper procedures under § 6103(h)(5) must be based on a consideration of what procedures will best carry out the purposes of the statute.”
 
 United States v. Hashimoto,
 
 878 F.2d 1126, 1130 (9th Cir.1989). Section 6103(h)(5) is an exception to the general rule establishing confidentiality with respect to disclosure of taxpayers’ returns.
 
 See
 
 26 U.S.C. § 6103(a). “The legislative history of § 6103(h)(5) reflects that Congress sought to eliminate the prior informational advantage enjoyed by the government regarding a potential juror’s tax history.”
 
 United States v. Spine,
 
 945 F.2d 143,147 (6th Cir.1991). Prior to passage of § 6103(h)(5), the government was able to obtain tax information on prospective jurors but tax defendants were not. In passing the Tax Reform Act of 1976, of which § 6103(h)(5) was one part, Congress decided to allow the government to maintain access to the information as long as defendants had access to the same information.
 
 See id.
 
 (detailing the legislative history of the Act).
 

 This circuit recently has ruled that the best way to ensure that the goals of § 6103(h)(5) are met is to create “a presumption of reversal ... when a party is denied access to § 6103(h)(5) information.”
 
 United States v. Schandl,
 
 947 F.2d 462, 469 (11th Cir.1991),
 
 cert. denied,
 
 — U.S. -, 112 S.Ct. 2946, 119 L.Ed.2d 569 (1992). The
 
 Schandl
 
 panel followed the Fifth Circuit decision in
 
 United States v. Masat,
 
 896 F.2d 88 (5th Cir.1990), in refusing to establish a
 
 per se
 
 rule that reversal is
 
 required
 
 if a defendant is denied the jury list before the trial.
 
 [5]
 
 Since the decision in
 
 Schandl,
 
 a number of circuits have adopted the same approach.
 
 See United States v. Axmear,
 
 964 F.2d 792, 793 (8th Cir.1992);
 
 United States v. Droge,
 
 961 F.2d 1030, 1032-37 (2nd Cir.),
 
 cert. denied,
 
 — U.S. -, 113 S.Ct. 609, 121 L.Ed.2d 544 (1992);
 
 Spine,
 
 945 F.2d at 145-48.
 

 “This presumption [of reversal] may be overcome where voir dire questioning elicits information similar to that accessible under § 6103(h)(5).”
 
 Schandl,
 
 947 F.2d at 469. Under § 6103(h)(5), the Secretary is required to disclose only whether any of the jurors have been the subject of a tax investigation. Here, as in
 
 Schandl,
 
 the trial court conducted a thorough voir dire examination. Through his questioning, the trial judge elicited more information than would have been available from the Secretary by asking any juror who had been audited whether he or she harbored ill feelings toward the IRS. In addition, all potential jurors were asked whether there was any reason they felt they could not be fair toward either party.
 
 [6]
 
 Therefore, the presumption of prejudice created by the district court’s denial of Callahan’s timely motion for the jury panel lists was sufficiently overcome.
 

 
 *496
 
 We want to make clear, however, that
 
 Schandl
 
 means what it says. Merely because we have adopted a rebuttable presumption standard and not a
 
 per se
 
 reversal standard does not mean that we interpret 26 U.S.C. § 6103(h)(5) to be discretionary. In the future, we expect the statute to be strictly followed.
 
 [7]
 
 We reiterate what the court said in
 
 Schandl:
 

 Our decision today is intended to do two things: (1) ensure that all timely requests for jury panel information will be honored by the district court; and (2) provide the district court with the tools necessary to guarantee a fair trial where a party cannot access information under the statute prior to voir dire.
 

 Schandl,
 
 947 F.2d at 469 (footnote omitted).
 

 III.
 

 Callahan asserts that there was insufficient evidence to convict him under 18 U.S.C. § 1623 because the evidence at trial failed to establish that Callahan knowingly made false statements to the grand jury that were material to the grand jury’s investigation. Callahan argues that the prosecutor asked intentionally ambiguous questions, which Callahan misinterpreted, and to which Callahan gave answers that were, at the most, unresponsive but not materially false. According to Callahan, the government did not prove that he knowingly lied to the grand jury regarding his business associations with “Spray-Away” and “Confederated Enterprises.”
 

 In reviewing a challenge on sufficiency of the evidence grounds, “ ‘we must view the evidence in the light most favorable to the government, drawing all reasonable inferences in favor of the jury’s verdict.’ ”
 
 United States v. Martin,
 
 961 F.2d 161, 163 (11th Cir.),
 
 cert. denied,
 
 — U.S. —, 113 S.Ct. 271, 121 L.Ed.2d 200 (1992) (quoting
 
 United States v. Van Hemelryck,
 
 945 F.2d 1493, 1499 (11th Cir.1991)). After reviewing the record, we conclude that a reasonable juror could have found that the government proved beyond a reasonable doubt that Callahan knowingly lied to the grand jury about his business dealings.
 
 See Martin,
 
 961 F.2d at 163 (citing
 
 Van Hemelryck,
 
 945 F.2d at 1499-1500).
 

 IV.
 

 Callahan’s final ground for appeal is that the district court abused its discretion by enhancing his offense level for obstruction of justice pursuant to U.S.S.G. § 3C1.1.
 
 [8]
 
 The enhancement was based on Callahan's production, during discovery, of the document that purported to be the contract between him and “Confederated Enterprises, Inc.” Among the specific conduct which constitutes obstruction of justice under § 3C1.1 is “producing or attempting to produce a false, altered, or counterfeit document or record during an official investigation or judicial proceedings.” U.S.S.G. § 3C1.1, comment, (n. 3).
 

 A finding that a defendant has obstructed justice pursuant to U.S.S.G. § 3C1.1 is a factual determination that will not be overturned on appeal unless clearly erroneous.
 
 United States v. Cain,
 
 881 F.2d 980, 982 (11th Cir.1989). The evidence introduced by the government at trial showing that the contract could not have
 
 *497
 
 been signed and executed when Callahan claimed it was — because the signature stamp had not yet been made — provided a sufficient basis on which to make a two-level enhancement under § 8C1.1.
 

 For the foregoing reasons, the conviction and the sentence imposed are AFFIRMED.
 

 [1]
 

 . Count One of the indictment alleged that Callahan obstructed the administration of justice in violation of 18 U.S.C. § 1505 by impeding an investigation by the Internal Revenue Service ("IRS”) of his tax records. Counts Two through Four alleged that Callahan willfully evaded paying taxes for 1973 and 1974 in violation of 26 U.S.C. § 7201. Counts Five through Seven alleged that Callahan willfully failed to file tax returns for the years 1983, 1984 and 1985 in violation of 26 U.S.C. § 7203. Counts Eight through Twelve alleged that Callahan made material false allegations to the federal grand jury in violation of 18 U.S.C. § 1623.
 

 [2]
 

 .26 U.S.C. § 6103(h)(5) provides:
 

 (5) Prospective jurors
 

 In connection with any judicial proceeding described in paragraph (4) to which the United States is a party, the Secretary shall respond to a written inquiry from an attorney of the Department of Justice (including a United States attorney) involved in such proceeding or any person (or his legal representative) who is a party to such a proceeding as to whether an individual who is a prospective juror in such a proceeding has or has not been the subject of any audit or other tax investigation by the Internal Revenue Service. The Secretary shall limit such response to an affirmative or negative reply to such inquiry.
 

 [3]
 

 . In its motion for reconsideration, the government cited to an order by United States District Judge William Terrell Hodges in
 
 United States v. Awan,
 
 No. 88-330CR-T-13(B) (M.D.Fla., Jan. 9, 1990), denying defendant’s request for release of the jury panel lists. The Magistrate rested her revised order, in part, on the ruling in
 
 Awan.
 
 However, Awan was indicted under the Money Laundering Control Act of
 
 1986,
 
 not under federal income tax laws. Thus, neither the district court’s order nor the opinion of this court on appeal,
 
 United States v. Awan,
 
 966 F.2d 1415 (11th Cir.1992), is binding on this case.
 

 [4]
 

 . Only Counts Eight through Twelve were subject to sentencing under the Sentencing Guidelines, as only those charged offenses occurred after November 1, 1987.
 

 [5]
 

 . In their briefs, Callahan and the government raise a number of arguments as to why this court should or should not adopt a
 
 per se
 
 rule. Because
 
 Schandl
 
 was decided after both sides submitted their briefs on appeal, most of these arguments became moot. However, it was not until a few days before this case was scheduled for oral argument that the government filed a motion with supplemental authority, including
 
 Schandl.
 
 Although this court is able to keep up to date on its own precedent, we recommend that all parties before this court follow the appropriate procedure under Fed.R.App.P. 28(j) in notifying the court of any changes in the law that affect their arguments on appeal.
 

 [6]
 

 . The following is an example of the questioning that took place:
 

 THE COURT: [I]s there anything about the nature of the charges in this case about which because of some experience you may have had or for some other reason you have formed a particularly strong opinion or conviction one way or another so that you might have difficulty serving as a fair and impartial juror in the case merely by virtue of the nature of the charges themselves and before you’ve heard anything more about the evidence or lack of evidence in the case? ...
 

 [PANELIST]: Yes, I just get real hateful when it comes to IRS, people not paying.
 

 THE COURT: All right.
 

 [PANELIST]: We work so hard too and people try.... We work so hard to pay our taxes, and people don’t.
 

 (Supp.R. at 3-2 — 3-3).
 

 [7]
 

 . To the extent any local rules of court prohibit disclosure of the jury list until the day of trial, those rules are preempted by § 6103(h)(5).
 
 See, e.g.,
 
 M.D.Fla.R. 5.01(b). In addition, we advise the government to adopt a policy of not opposing a defendant’s motion for release of the jury list under § 6103(h)(5).
 

 [8]
 

 . Without reference to any case law, Callahan also asserts that his due process rights were violated when the probation officer responsible for writing Callahan’s Presentence Investigation ("PSI”) held a "position of the parties” meeting without Callahan or his counsel present. Callahan was proceeding
 
 pro se
 
 in this action and had stand-by counsel. Although Callahan claims that he was not notified of the meeting, he admits that his counsel was notified, but chose not to attend because of a scheduling conflict.
 

 Despite their absence from this meeting, Callahan and his counsel prepared written objections to the PSI, many of which were resolved in his favor. In addition, Callahan was given ample opportunity at the sentencing hearing to voice his objections to the PSI and rebut the government’s evidence. Through these procedures, Callahan's due process interests were adequately protected.
 
 See United States v. Castellanos,
 
 904 F.2d 1490, 1495 (11th Cir.1990);
 
 United States v. Wise,
 
 881 F.2d 970, 972 (11th Cir.1989).