[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 10, 2005
THOMAS  K. KAHN
CLERK

No. 03-15227
Non-Argument Calendar

_____

D. C. Docket No. 02-00415-CR-T-24-TBM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SAMUEL VALIANT SHANNAHAN, III,
a.k.a. Val,
a.k.a. Samuel Valiant Shannahan,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(June 10, 2005)**

Before TJOFLAT, BIRCH and DUBINA, Circuit Judges.

PER CURIAM:

Samuel Valiant Shannahan, III, who pled guilty to ten counts of unlawfully transferring a firearm in violation of 26 U.S.C. § 5861(e), appeals his sentence of fifty-six months of imprisonment. Specifically, Shannahan argues that the district court erred by: (1) refusing to enforce the terms of a plea agreement after it had been breached; (2) enhancing his sentence in violation of his constitutional rights under Blakely v. Washington, 542 U.S. __, 124 S. Ct. 2531 (2004) and United States v. Booker, 543 U.S. ___, 125 S. Ct. 738 (2005); (3) enhancing his sentence for obstruction of justice; and (4) declining to grant an acceptance of responsibility sentence reduction. Because the district court did not commit reversible error in its sentencing of Shannahan, we **AFFIRM**.

## I. BACKGROUND

Shannahan was a federally-licensed firearms dealer working in Florida. As such, he was responsible for filing with federal authorities various registration and transfer of ownership forms when he sold firearms to customers. In August 2002, however, one of Shannahan's customers, Dr. Robert Goldstein, was the subject of a federal criminal investigation which led to the discovery of various firearms in Goldstein's possession which were not properly registered in Goldstein's name. Later research confirmed that four of these weapons were registered in Shannahan's name and were transferred by him to Goldstein without filing the

2

proper paperwork with federal authorities.

Based on this discovery, in September 2002, federal agents from the Bureau of Alcohol, Tobacco, and Firearms ("ATF") executed a search warrant of Shannahan's residence. During the search, the agents found that Shannahan was unable to account for several weapons which were registered in his name and which were legally required to be in his possession. While Shannahan told the agents that he did not know the whereabouts of all the missing weapons, he indicated that some of the weapons could be found in Goldstein's vault and that some of the weapons had been destroyed. Particularly, Shannahan told federal agents that he had destroyed a Zastava M61J machine gun registered in his name. Following Shannahan's direction, federal agents executed a search of Goldstein's vault and discovered, inter alia, the Zastava that Shannahan had indicated he destroyed. Federal agents then telephoned Shannahan and asked him whether he had any documentation that the Zastava had in fact been destroyed according to federal regulations. Shannahan complied with this request for documentation and faxed to the ATF a document which indicated that the Zastava had been destroyed.

On 3 April 2003, a federal grand jury returned a second superceding indictment which charged Shannahan with eleven counts of unlawfully transferring a firearm, in violation of 26 U.S.C. § 5861(e), and one count of making a false

3

statement, in violation of 18 U.S.C. § 1001(a)(2). Pursuant to a plea agreement, Shannahan pled guilty to one count of unlawfully transferring a firearm and proceeded to sentencing. At the sentencing hearing, however, the government contended that Shannahan admitted to transferring certain weapons to Goldstein which he had not previously disclosed. As a result, the government, in violation of the plea agreement that had been negotiated with Shannahan, requested the district court to apply an obstruction of justice sentence enhancement. Recognizing the breach, the district court heard argument about whether it should order specific performance of the plea agreement or whether it should allow Shannahan to withdraw his plea. After the district court denied Shannahan's request for specific performance, Shannahan withdrew his plea and indicated that he wanted to proceed to trial.

On 13 August 2003, a federal grand jury returned a third superceding indictment which charged Shannahan with ten counts of unlawfully transferring a firearm. Shannahan subsequently pled guilty to all ten counts in the indictment. At sentencing, the district court took testimony and heard argument regarding whether Shannahan's conduct merited an obstruction-of-justice enhancement and/or an acceptance-of-responsibility reduction. Specifically, the district court considered Shannahan's fax to ATF agents which indicated that the Zastava had

4

been destroyed. The district court found that Shannahan had indicated to ATF agents when they first searched his residence that he believed he had destroyed the Zastava and subsequently faxed them false documentation supporting that assertion. Despite this finding, Shannahan argued that he was not wilfully misleading the ATF. He argued that his conduct was not wilful because he faxed the document in response to the ATF's request for documentation. In addition, he indicated that he intended to destroy the weapon at the time the faxed document was created, although he never carried out this intent. Moreover, he argued that his fax could not have misled federal authorities because they were in possession of the Zastava when they contacted him for more information. Despite these arguments, the district court found that the obstruction-of-justice enhancement was warranted because Shannahan produced a falsified document to the ATF without informing them that it was not accurate. As a result of this ruling, the district court found that Shannahan would be eligible for an acceptance-of-responsibility sentence reduction only if he showed extraordinary circumstances. Because Shannahan was unable to make this showing, the district court found that an acceptance-of-responsibility reduction was not warranted. Shannahan was sentenced to fifty-six months of imprisonment.

On appeal, Shannahan argues that the district court erred by denying his

request for specific performance of the plea agreement he negotiated with the government. Particularly, Shannahan argues that the district court should have enforced the provision in which the government agreed not to argue for an obstruction-of-justice sentence enhancement. In addition, Shannahan argues for the first time on appeal that the district court's use of the United States Sentencing Guidelines ("Guidelines") to enhance his sentence for obstruction of justice violated his Sixth Amendment rights pursuant to Blakely. Finally, his arguments based on the plea agreement and Blakely notwithstanding, Shannahan argues that the district court erred in its application of the Guidelines by imposing the obstruction-of-justice enhancement and by denying the acceptance-of-responsibility reduction. We address each argument in turn.

## II. DISCUSSION

A. Request for Specific Performance

We review for an abuse of discretion the district court's decision not to grant specific performance of a plea agreement. See United States v. Tobon-Hernandez, 845 F.2d 277, 281 (11th Cir. 1988). Following the government's breach of a plea agreement,[1] the district court has two options: (1) order specific performance, which entitles the defendant to resentencing before a different judge in accordance

---

[1] On appeal, the government does not contend that it did not breach the plea agreement. Accordingly, our analysis focuses on the remedies for breach of a plea agreement.

6

with the terms of the plea agreement; or (2) allow the defendant to withdraw the plea of guilty and proceed to trial. See id. at 280 (citing Santobello v. New York, 404 U.S. 257, 263, 92 S. Ct. 495, 499 (1971)). "While the choice of a remedy is within the discretion of the court rather than the defendant, the remedy of withdrawal of the guilty plea has not been favored in this circuit." United States v. Jefferies, 908 F.2d 1520, 1527 (11th Cir. 1990). This preference for specific performance recognizes the necessity for the government to honor plea agreements and for courts to ensure that defendants receive the benefit of the bargain they negotiated in exchange for their surrender of certain constitutional rights to trial. See Santobello, 404 U.S. at 262, 92 S. Ct. at 499. Where practical considerations would make specific performance problematic, however, withdrawal of the guilty plea is a sufficient remedy for the government's breach. See United States v. Taylor, 77 F.3d 368, 372 (11th Cir. 1996) (concluding that withdrawal was the appropriate remedy because the government's breaching statements were part of the record that likely would have been examined by a different sentencing judge had specific performance been ordered).

Based on the foregoing, the district court did not abuse its discretion by denying Shannahan's request for specific performance of the plea agreement. As the district court noted, the probation officer's presentencing investigation report

("PSR") recommended a sentence enhancement for obstruction of justice based on Shannahan's fax of a document to the ATF regarding the destruction of the Zastava. Accordingly, had the district court granted the specific performance sought by Shannahan, the newly appointed sentencing judge likely would have been confronted with a PSR containing the same recommendation. Consequently, the record containing Shannahan's responses to questions relating to the fax and the government's arguments for enhancement in breach of the agreement would have been relevant to, and the subject of, subsequent sentencing proceedings. Thus, based on Taylor, withdrawal was the proper remedy because the grant of specific performance would not have effectively remedied the breach. See id. Moreover, the district court found, and our review of the record confirms, that Shannahan was not consistent in the statements he made under oath during various sentencing proceedings. See, e.g., R6 at 33-34; R10 at 85. Thus, while our preference is to grant specific performance where a defendant has adhered to the terms of the agreement, see United States v. Rewis, 969 F.2d 985, 989 (11th Cir. 1992), the district court found, and we agree, that Shannahan's conduct did not merit giving him the benefit of the bargain he made. Because the district court "is in a better position to decide whether the circumstances of [a] case require" specific performance or withdrawal, we have adopted a deferential standard of

8

review for district court orders that remedy breaches of plea agreements. <u>See</u> <u>Santobello</u>, 404 U.S. at 263, 92 S. Ct. at 499. Based on that standard, and on the facts of this case, we cannot conclude that the district court abused its discretion by refusing to order specific performance and by allowing Shannahan to withdraw his plea.

B. *Blakely/Booker* Claim

Because Shannahan raises his <u>Blakely/Booker</u> claim for the first time on appeal, we review for plain error. <u>See</u> <u>United States v. Rodriguez</u>, 398 F.3d 1291, 1298 (11th Cir. 2005). To prevail under a plain error standard, the appellant must establish: (1) an error; (2) that the error is plain; and (3) that the plain error affected substantial rights. <u>United States v. Cotton</u>, 535 U.S. 625, 631, 122 S. Ct. 1781, 1785 (2002) (citation omitted). Once the appellant proves these three elements, we may correct the error only if it "'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" <u>Id.</u> (citation omitted).

On 12 January 2005, the United States Supreme Court decided <u>United States v. Booker</u>, 543 U.S. ___, 125 S. Ct. 738 (2005), which applied the <u>Blakely</u> analysis to the Guidelines and held that their mandatory application was unconstitutional under the Sixth Amendment. <u>See</u> 543 U.S. at ___, 125 S. Ct. at 749-56. Subsequently, we have decided that, on review of <u>Booker</u> and <u>Blakely</u> claims

9

raised for the first time on appeal, a district court's enhancement of a sentence under mandatory sentencing guidelines will meet the first and second prongs of the plain error test. See Rodriguez, 398 F.3d at 1298-99. On review of the third prong, however, we must determine "whether there is a reasonable probability of a different result if the guidelines had been applied in an advisory instead of binding fashion by the sentencing judge." Id. at 1301. The defendant bears the burden to show that a different outcome would have resulted in the absence of the error. See id. at 1300. Accordingly, where it is unclear whether the sentence would have been different had the Guidelines been applied in an advisory manner, the sentence must be affirmed. See id. at 1301 (determining that the defendant failed to satisfy the third prong because the record revealed nothing about whether the sentencing judge would have imposed a different sentence had the Guidelines been advisory); see also United States v. Shelton, 400 F.3d 1325, 1332 (11th Cir. 2005) (concluding the defendant met the "heavy burden" on the third prong where the sentencing judge imposed a sentence at the lower end of the Guidelines and made several comments that "the sentence required by the Guidelines was too severe").

Assuming, based on Rodriguez, that Shannahan can meet the first two prongs of the plain error test, we proceed to analyze the third prong. The district court sentenced Shannahan to fifty-six months of imprisonment, which the district

court characterized as "fairly much in the middle" of the applicable Guidelines range, R10 at 94, which was fifty-one to sixty-three months. The district court explained it was "not sentencing [Shannahan] at the low end" and it was "not sentencing [him] at the high end" of the Guidelines range because it "kn[e]w of no reason to sentence [him at] either place." Id. Aside from these comments, the district court expressed no other views about the sentence range imposed by the Guidelines. Accordingly, it is unknown what the sentencing court would have done if the Guidelines were considered advisory and not mandatory and therefore Shannahan has failed to sustain his burden under Rodriguez. In addition, while the district court did not comment on what it would have done had the Guidelines been advisory, there are indicia that the district court would not have imposed a lesser sentence. First, the district court enhanced the sentence for obstruction of justice and declined to reduce the sentence for Shannahan's acceptance of responsibility. Second, the district court found that Shannahan was not "forthcoming and honest" throughout the sentencing proceedings. Id. at 85. Third, we note that, in the absence of the Guidelines, the district court could have imposed ten years of imprisonment for each count of unlawfully transferring a firearm. 28 U.S.C. § 5871. Thus, although the district court ultimately sentenced Shannahan to the lower-middle of the Guidelines range, we cannot conclude based on the record that

11

the district court would have imposed a lesser sentence had the Guidelines been advisory. See United States v. Orduno-Mireles, __ F.3d __, __ n.4 (11th Cir. Apr. 6, 2005) (concluding that a defendant had not met the third plain error prong because the record demonstrated that the district court would not have imposed a "lesser sentence" than the one given under the Guidelines). In sum, Shannahan has failed to meet the third prong of the plain error test under Rodriguez and therefore we reject his claim that the district court committed reversible Booker error.

C. Section 3C1.1 Sentence Enhancement for Obstruction of Justice

When considering an appeal from a district court's enhancement of a sentence under § 3C1.1 of the Guidelines for obstruction of justice, the standard of review is dictated by the circumstances of the case. "Where the district court must make a particularized assessment of the credibility or demeanor of the defendant, we accord special deference to the district court's credibility determinations, and we review for clear error." United States v. Amedeo, 370 F.3d 1305,1318 (11th Cir. 2004). "'Conversely, where the defendant's credibility or demeanor is not at issue, and the defendant's conduct can be clearly set forth in detailed, non-conclusory findings, we review de novo the district court's application of the enhancement.'" Id. (citation omitted). Here, the district court assessed a § 3C1.1 enhancement based in part on its finding that Shannahan had not been

12

"forthcoming" in the sentencing proceedings. R10 at 82. Accordingly, because this represents a credibility determination on the part of the district court, we review the district court's imposition of the obstruction-of-justice enhancement for clear error.

Section 3C1.1 of the Guidelines provides that a district court may impose a two-level enhancement if it finds that: (1) "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation," and (2) the obstructive conduct related to the offense for which the defendant was convicted. U.S.S.G. § 3C1.1. The Application Notes for this section of the Guidelines provide that "producing or attempting to produce a false, altered, or counterfeit document or record during an official investigation" is a type of action that warrants a two-level obstruction of justice enhancement. Id. at Application Note 4(c). Construing this provision, we have previously found that a two-level enhancement was appropriate when a defendant produced to the government during discovery a document which was false. See United States v. Callahan, 981 F.2d 491, 496-97 (11th Cir. 1993) (finding that evidence discovered by the government proved that the document could not have been executed when the defendant claimed it was executed).

Based on the foregoing, the district court did not err in applying the

13

obstruction-of-justice enhancement. Although Shannahan argues that the enhancement should not apply because he did not fax the document to the ATF with the intention to mislead, the district court made a credibility assessment of Shannahan's testimony and we must accord special deference to that determination. Accordingly, without more than Shannahan's assertion of his good intentions, we cannot accept his argument. Moreover, Shannahan's alternative argument—that the enhancement should not apply because the ATF already had in its possession the Zastava and therefore could not have been misled by the fax—is equally unpersuasive. Application Note 4(c), in contrast to other types of obstructive conduct listed in the Guidelines, does not contain any qualifier that the production of a document *materially* mislead federal authorities. Compare U.S.S.G. § 3C1.1 at Application Note 4(c), with id. at Application Note 4(d) (stating that an enhancement is warranted for "destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation"); id. at Application Note 4(g) (stating that an enhancement is warranted for "providing a materially false statement to a law enforcement officer). Both the plain text of Application Note 4(c) and our precedent demonstrate that the enhancement is appropriate upon the production of the false document to the government, which Shannahan accomplished here when

14

he faxed the false document to the ATF.  See Callahan, 981 F.2d at 496-97.

Additionally, Callahan refutes Shannahan's final argument that the enhancement

cannot be applied because Shannahan sent the fax in response to the ATF's request

for documentation.  See id. (determining that a § 3C1.1 enhancement was

appropriate where defendant produced a false document in response to a

government discovery request).  In essence, Shannahan sent a false document to

federal authorities knowing that it was false without informing them of its falsity.

Because this constitutes obstruction under the plain text of Application Note 4(c)

and our precedent, and because it and the evasiveness of Shannahan's subsequent

testimony about the fax have resulted in the needless expenditure of judicial

resources to determine the truth, the district court appropriately enhanced

Shannahan's sentence for obstruction of justice.  See U.S.S.G. § 3C1.1 at

Application Note 4(c); Callahan, 981 F.2d at 496-97; United States v. Witherell,

186 F.3d 1343, 1345 (11th Cir. 1999) (per curiam) (finding § 3C1.1 enhancement

appropriate where defendant's conduct unnecessarily caused the waste of judicial

resources).

D.  Section 3E1.1 Sentence Reduction for Acceptance of Responsibility

We review a district court's determination as to an acceptance-of-

responsibility sentence level reduction for clear error.  United States v. Williams,

15

340 F.3d 1231, 1241 (11th Cir. 2003).

Section 3E1.1 of the Guidelines provides that "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels." U.S.S.G. § 3E1.1(a). A defendant can qualify for an additional one level reduction if the defendant assists the government by timely notifying the authorities of the intention to enter a plea of guilty. Id. at § 3E1.1(b). The entry of a guilty plea, however, is not sufficient by itself to entitle a defendant to the reduction. See id. at Application Note 3. Moreover, if a defendant is assessed a § 3C1.1 enhancement for obstruction of justice, the § 3E1.1 reduction can be granted only in "extraordinary" circumstances. Id. at Application Note 4. The burden of proof is on the defendant to show that the sentence reduction is merited. See United States v. Paslay, 971 F.2d 667, 675 (11th Cir. 1992).

Based on these standards, the district court did not clearly err by denying Shannahan the § 3E1.1 reduction. Although Shannahan pled guilty twice, the entrance of the guilty pleas did not necessarily entitle Shannahan to the reduction. In evaluating the propriety of the reduction, the district court remarked that the defendant was not "forthcoming" in his testimony. R10 at 85. Because the "[t]he district court is in a unique position to evaluate whether a defendant has accepted responsibility for his acts," the district court's credibility determinations are

16

"'entitled to great deference on review.'" Paslay, 971 F.2d at 675 (citation omitted); see Williams, 340 F.3d at 1241 (noting how the district court must make a determination of the defendant's "sincerity"). According due deference to the district court's characterization of Shannahan's testimony and conduct, we cannot conclude that the district court's finding—that Shannahan's conduct did not present an "extraordinary" case where both a § 3C1.1 enhancement and a § 3E1.1 reduction applied—was clearly erroneous. See United States v. Arguedas, 86 F.3d 1054, 1060 (11th Cir. 1996) (determining that a § 3E1.1 reduction was inappropriate where the defendant made certain "misstatements" to investigators and the district court).

### III. CONCLUSION

On appeal, Shannahan argued that the district court improperly sentenced him to fifty-six months of imprisonment because it failed to order specific performance of the breached plea agreement, committed Booker error, and misapplied §§ 3C1.1 and 3E1.1 of the Guidelines. As we have explained, however, the district court did not commit reversible error in making these determinations at Shannahan's sentencing. Accordingly, the sentence imposed by the district court is **AFFIRMED**.

TJOFLAT, Circuit Judge, concurring specially:

As I explain in my dissent to the court's refusal to rehear Rodriguez en banc, structural error occurs, and the third prong of the plain-error test is therefore inapplicable, where the district court enhances the defendant's sentence on the basis of facts not admitted by the defendant or found by a jury beyond a reasonable doubt. See United States v. Rodriguez, — F.3d —, 2005 WL 895174 (11th Cir. Apr. 19, 2005) (Tjoflat, J., dissenting from the denial of rehearing en banc).[2] Accordingly, the court should consider whether this structural error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." United States v. Olano, 507 U.S. 725, 736, 113 S. Ct. 1770, 1779, 123 L. Ed.2d 508 (1993). The court declines to do address this point because, as I agree, it is Rodriguez bound.

---

[2] Here, the court enhanced Shannahan's base offense level, and thus his sentences, by two levels pursuant to U.S.S.G § 3C1.1 for conduct he denied, obstruction of justice. Had the court not enhanced the base offense level in this way, the Guidelines sentence range would have been 41 to 51 months instead of 51 to 63 months, and the court could not have imposed concurrent prison sentences of 56 months.