[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-14150
Non-Argument Calendar
_____

D.C. Docket No. 4:10-cr-10018-JLK-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FELIX H. CORDERO-CASTRO,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 4, 2017)

Before HULL, JULIE CARNES and JILL PRYOR, Circuit Judges.

PER CURIAM:

After pleading guilty, Felix Cordero-Castro appeals his 46-month sentence for one count of possession and concealment of a stolen vessel that crossed state and United States boundaries after having been stolen, in violation of 18 U.S.C. §§ 2313(a) and 2. On appeal, Cordero-Castro argues that the district court erred in applying two-level increases in Cordero-Castro's offense level for use of a special-skill, pursuant to U.S.S.G. § 3B1.3, and obstruction of justice, pursuant to U.S.S.G. § 3C1.1. Cordero-Castro also argues that his 46-month sentence, at the low end of his advisory guidelines range of 46 to 57 months, was substantively unreasonable. Upon review of the record and the parties' briefs, we affirm Cordero-Castro's sentence.

## I. GUIDELINES ENHANCEMENTS

### A.    Special Skill Enhancement

The district court did not err in applying a two-level special-skill enhancement to Cordero-Castro's offense level pursuant to § 3B1.3.[1] The Guidelines call for the two-level increase if "the defendant . . . used a special skill[] in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. According to the commentary, a "special skill" is one "not possessed by members of the general public and usually requiring substantial

---

[1]We review de novo the legal meaning of the term "special skills," but review the district court's application of the guidelines to the facts of the case for clear error. United States v. Calderon, 127 F.3d 1314, 1339 (11th Cir. 1997).

education, training or licensing.  Examples would include pilots, lawyers, doctors, accountants, chemists, and demolition experts." Id. § 3B1.2 cmt. n.4.  This Court has concluded that "captaining a vessel on the high seas is the type of activity that requires skills not possessed by members of the general public" and therefore qualifies as a "special skill" for purposes of § 3B1.3.  United States v. Calderon, 127 F.3d 1314, 1339 (11th Cir. 1997).

It is undisputed that when the U.S. Coast Guard interdicted the stolen yacht in international waters approximately 65 nautical miles off the coast of Mexico, Cordero-Castro was at the helm, driving the vessel.  Cordero-Castro identified himself as the master of the vessel and the other individuals on the boat as his crew.  Cordero-Castro also provided the Coast Guard with the vessel's purported registration document, which turned out to be fraudulent.  Data from the GPS found on the yacht indicated that the vessel had made repeated trips back and forth between Cuba and Mexico.  At the sentencing hearing, Special Agent Paul Shultz of the Coast Guard Investigative Service, the government's expert in the navigation and operation of vessels larger than 40 feet, testified that an average person could not walk off the street and pilot a vessel such as the yacht in question because of the size of the vessel, certain startup and battery procedures, and the need to switch from shore power to a main breaker.

3

The facts here are similar in several respects to Calderon, where we concluded that captaining vessel on the high seas was a special-skill under § 3B1.3. See Calderon, 127 F.3d at 1339.  Cordero-Castro piloted a yacht that was over 20 feet longer than the 38-foot boat piloted by the defendants in Calderon and was likewise engaged in a long international voyage with specific, predetermined stopping points. See id. at 1339-40.  The district court properly concluded that the similarities between this case and Calderon and the expert testimony from Special Agent Shultz were sufficient to show that an average person off the street could not have piloted the yacht.

## B.    Obstruction-of-Justice Enhancement

The district court also did not err in applying the two-level enhancement for obstruction of justice.[2]  A defendant is subject to a two-level increase in his offense level if: (1) he "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing" of the offense of conviction; and (2) the obstructive conduct related to "the defendant's offense of conviction and any relevant conduct."  U.S.S.G. § 3C1.1(1) & (2)(A).  The § 3C1.1 increase applies when a defendant "produce[es]

---

[2]When the district court imposes an obstruction-of-justice enhancement, we review the district court's factual findings for clear error and its application of the Sentencing Guidelines to the facts de novo.  United States v. Massey, 443 F.3d 814, 818 (11th Cir. 2006).

or attempt[s] to produc[e] a false, altered, or counterfeit document or record during an official investigation or judicial proceeding." Id. § 3C1.1 cmt. n.4(C).

Here, the record established that Cordero-Castro provided a false vessel registration to the Coast Guard when they boarded the yacht to investigate. Much of the false information in the registration was related to Cordero-Castro. For example, the driver's license number listed on the registration belonged to Cordero-Castro, rather than the listed owner of the yacht, Manuel Aguirre. Also, the title number, transaction ID number, and previous ID on the yacht registration provided by Cordero-Castro were identical to the identification numbers on Cordero-Castro's car registration. Given that the false information in the vessel registration matched Cordero-Castro's personal information, the district court reasonably found that Cordero-Castro was aware that the vessel registration was false. The evidence presented was sufficient to support the finding that Cordero-Castro attempted to obstruct justice by providing the false vessel registration to the Coast Guard.

Cordero-Castro argues that there was no evidence that he prepared the registration, and thus he did not "produce" it for § 3C1.1 purposes. This Court, however, has upheld application of the obstruction-of-justice enhancement where the defendant merely "presented" a false document, without requiring evidence that the defendant also created it. See United States v. Callahan, 981 F.2d 491,

5

494, 496-97 (11th Cir. 1993) (involving a defendant who "presented to the IRS" a false compensation agreement during discovery in an income tax evasion case). Accordingly, we reject Cordero-Castro's claim that the term "produce" in commentary note 4(C) to § 3C1.1 means prepared or created, as opposed to presented.

The government also did not need to prove that the false vessel registration created an actual hindrance for the obstruction-of-justice enhancement to apply. While some examples of obstruction in the commentary to § 3C1.1 expressly require a showing that the obstructive conduct hindered the investigation, see, e.g., § 3C1.1 cmt. n. 4(G) & 5(A), this Court has explained that when the defendant produced a false document during an official investigation, no actual hindrance is necessary under commentary note 4(C). See United States v. McGuinness, 451 F.3d 1302, 1305 n.1 (11th Cir. 2006).

## II.  SUBSTANTIVE REASONABLENESS

Cordero-Castro has not shown that his sentence is substantively unreasonable. We review the reasonableness of a sentence for an abuse of discretion using a two-step process. United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008). We look first at whether the district court committed any significant procedural error and then at whether the sentence is substantively unreasonable in light of the 18 U.S.C. § 3553(a) sentencing factors and the totality

6

of the circumstances. <u>Id.</u>[3] The party challenging the sentence bears the burden of proving it is unreasonable. <u>Id.</u> at 1189. We will reverse only if we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." <u>Id.</u> at 1191 (quotation marks omitted).[4]

Here, the district court listened to Cordero-Castro's arguments for a downward variance, including his lack of a criminal history and his family situation. The district court also considered the fact that Cordero-Castro spent seven years in a Cuban prison for human smuggling, describing it as a "horrible thing." However, in response to Cordero-Castro's argument that he was imprisoned in Cuba based on the same facts supporting his current federal offense, the district court pointed out that there was no evidence as to why Cuba prosecuted Cordero-Castro for human smuggling.

---

[3]Apart from the two guidelines calculations discussed above, Cordero-Castro does not raise any procedural error at his sentencing and argues only that his sentence is substantively unreasonable.

[4]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

The district court then explicitly considered the § 3553(a) factors and determined that the need for deterrence and the seriousness of the offense outweighed the remaining factors.  The district court expressed sympathy for Cordero-Castro's children and family, noting that "the innocents are the ones who always suffer the most in . . . these cases."  The district court denied Cordero-Castro's request for a downward variance and imposed a 46-month sentence, at the low end of the advisory guidelines range of 46 to 57 months' imprisonment.

Cordero-Castro has not met his burden to show that his sentence was substantively unreasonable.  First, Cordero-Castro's 46-month sentence is at the low end of the advisory guidelines range of 46 to 57 months and less than half the 10-year statutory maximum for his offense, both indicators of reasonableness.  See United States v. Hunt, 526 F.3d 739, 746 (11th Cir. 2008); United States v. McKinley, 732 F.3d 1291, 1299 (11th Cir. 2013).

The district court's determination that a downward variance was not warranted because of the seriousness of the offense and the need for deterrence is supported by the record.  When he was interdicted by the Coast Guard, Cordero-Castro was piloting a roughly one-million dollar stolen yacht in international waters.  Cordero-Castro gave the Coast Guard false registration papers for the vessel and a false South Florida address for his U.S. residence.  Upon being released on his own recognizance, Cordero-Castro absconded to Cuba, where he

8

was arrested a couple of months later and prosecuted by Cuban authorities for human smuggling. He was apprehended by U.S. authorities only because, after he served his 7-year Cuban prison sentence, he attempted to re-enter the United States at the Texas border.

Although Cordero-Castro complains that the district court did not adequately consider the time he spent in a Cuban prison, he did not come forward with evidence supporting his claim that he was sentenced in Cuba for the same conduct at issue here. Under the circumstances, we cannot say the district court abused its discretion in refusing to grant Cordero-Castro's request for a downward variance.

**AFFIRMED.**