[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-12829
Non-Argument Calendar
_____

D.C. Docket No. 9:14-cr-80206-KAM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRIAN CHARLES TOLLEY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 20, 2018)

Before TJOFLAT, NEWSOM and HULL, Circuit Judges.

PER CURIAM:

Brian Charles Tolley executed a fraudulent scheme against his employer, PartsBase, by submitting false expense reports. Tolley claimed he used his personal credit card to buy information from government agencies through Freedom of Information Act (the "FOIA") requests. In reality, Tolley had not incurred these expenses. He also forged documents from government agencies to support the false expense reports he submitted to PartsBase. Additionally, Tolley failed to report the proceeds of his fraud on his tax returns, and, for some years, he did not file tax returns at all, even though he was required to file them. In a superseding indictment, the Government charged Tolley with wire fraud, in violation of 18 U.S.C. § 1343; identity theft, in violation of 18 U.S.C. §§ 1028(a)(7), (b)(1)(D); aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1); possessing counterfeit government seals, in violation of 18 U.S.C. § 506(a)(3); money laundering, in violation of 18 U.S.C. § 1957; making and subscribing false returns, in violation of 26 U.S.C. § 7206(1); and failing to file tax returns, in violation of 26 U.S.C. § 7203. A jury found him guilty of all 49 counts, and the District Court sentenced Tolley to 108 months' imprisonment.

Tolley makes three arguments on appeal. First, he argues the District Court improperly admitted two kinds of evidence: (a) documents that Tolley submitted to a credit union as part of a loan application and (b) evidence that Tolley did not file tax returns in 2014 and 2015 and was required to do so. As part of the loan

2

application, Tolley had to submit copies of his two most recent tax returns. To comply, Tolley submitted falsified tax returns that he never submitted to the Internal Revenue Service ("IRS"). He challenges both the loan application documents and the evidence that he failed to file returns in 2014 and 2015 as improper evidence of uncharged criminal conduct.

Second, Tolley argues that his sentence is procedurally unreasonable because the District Court applied a two-level enhancement for obstruction of justice and a two-level enhancement for abuse of trust. Tolley provided falsified emails to the Government during discovery, but he claims the obstruction-of-justice enhancement was improper because the Government did not introduce the emails at trial. He argues the abuse-of-trust enhancement was improper because he did not have the discretion to write checks or keep the financial records for PartsBase. Instead, Tolley says he submitted expense reports that required approval.

Third, Tolley argues that his sentence is substantively unreasonable because the District Court should have granted a larger downward variance. We reject all three arguments and affirm.

I.

3

We review a district court's evidentiary rulings for abuse of discretion. *United States v. Augustin*, 661 F.3d 1105, 1123 (11th Cir. 2011) (per curiam).  We will consider separately the two evidentiary rulings Tolley challenges.

A.

First, Tolley argues the District Court improperly admitted documents that he submitted to a credit union as part of a loan application, including falsified tax returns for 2012 and 2013 that he never submitted to the IRS.  Tolley argues these documents were inadmissible under Rule 404(b)(1) of the Federal Rules of Evidence, which prohibits a party from introducing "[e]vidence of a crime . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Tolley argues this evidence shows only that he had the propensity to commit an uncharged crime, bank fraud.

While evidence of a crime is inadmissible as propensity evidence, it may be admissible to prove "intent, knowledge, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  Indeed, the District Court seemed to rely on Rule 404(b)(2) to admit the evidence: it found the application documents were relevant to show that Tolley knew he was required to file tax returns in 2012 and 2013.  The District Court also concluded that the documents show Tolley did not intend to file tax returns, even though he knew he was required to do so.

4

When deciding whether a district court abused its discretion in admitting evidence of prior bad acts under Rule 404(b), we apply a three-prong test. *United States v. Phaknikone*, 605 F.3d 1099, 1107 (11th Cir. 2010).

> First, the evidence must be relevant to an issue other than the defendant's character. Second, as part of the relevance analysis, there must be sufficient proof so that a jury could find that the defendant committed the extrinsic act. Third, the probative value of the evidence must not be substantially outweighed by its undue prejudice, and the evidence must meet the other requirements of Rule 403.

*Id.* (quotation and citation omitted).

Here, the first prong is satisfied because the loan application documents were relevant to show that Tolley knew he was required to file tax returns in 2012 and 2013. Had Tolley thought he were excused from filing tax returns in 2012 and 2013, he likely would have told the credit union that. Thus, the false tax returns make it more likely that Tolley knew he was required to file and intentionally did not do so. *See Cheek v. United States*, 498 U.S. 192, 201, 111 S. Ct. 604, 610 (1991) (explaining that the Government must prove the defendant knew he was required to file a tax return and voluntarily and intentionally did not file one). So the loan application documents are relevant to an issue other than Tolley's character, and the first prong is satisfied.

The second prong is satisfied because there was sufficient proof that a jury could find Tolley submitted the false tax returns for 2012 and 2013 to the credit union. During trial, the Government called the loan officer who worked with

5

Tolley on the loan. She testified that Tolley emailed her the tax returns for 2012 and 2013, and she also testified she was unaware that Tolley never filed those returns with the IRS. The Government also called an IRS agent who testified that Tolley did not file tax returns—including the returns Tolley sent to the loan officer—in 2012 or 2013. Thus, the second prong is satisfied.

The third prong is satisfied because the probative value of the loan application documents was not substantially outweighed by its undue prejudice. Nothing in the record suggests the Government focused on the bank fraud. During closing argument, the Government argued only that the loan application shows Tolley knew he was required to file tax returns in 2012 and 2013.

The District Court did not abuse its discretion in admitting the loan application documents.

### B.

Next, Tolley argues the District Court improperly admitted evidence showing he failed to file tax returns in 2014 and 2015—crimes for which he was not charged. Tolley again argues that the evidence was admitted to show only that he has a propensity for failing to file tax returns. The District Court seemed to admit the evidence under Rule 404(b)(2); it found that evidence relating to Tolley's failure to file tax returns in 2014 and 2015 was relevant to show Tolley's intent not to file tax returns for the years that were charged. The District Court

6

also found the evidence was relevant to show that Tolley did not just make a mistake when he failed to file for the years that were charged.

Again, we must apply the three-prong test. *Phaknikone*, 605 F.3d at 1107. The first prong is satisfied because the evidence shows it is more likely that Tolley intentionally failed to file tax returns for the charged years, and the evidence also shows it is less likely Tolley made a mistake when he failed to file tax returns for the charged years. *See, e.g.*, *United States v. Ford*, 784 F.3d 1386, 1393 (11th Cir. 2015) (finding that evidence of fraudulently filed tax returns, although uncharged, was relevant to show that the defendant did not mistakenly file the fraudulent returns for which she was charged). These are proper uses under Rule 404(b)(2).

The second prong is satisfied because there was sufficient proof that a jury could find Tolley did not file tax returns for 2014 and 2015. During trial, the Government called an IRS agent who testified that Tolley did not file tax returns in 2014 and 2015 and was required to do so.

The third prong is satisfied because the probative value of the evidence was not substantially outweighed by its undue prejudice. Tolley points to nothing in the record that shows the Government used this evidence as propensity evidence.

The District Court did not abuse its discretion in admitting evidence that Tolley failed to file tax returns in 2014 and 2015.

II.

7

In determining procedural reasonableness, we review a district court's application of the Guidelines *de novo* and its factual findings for clear error. *United States v. Barrington*, 648 F.3d 1178, 1194–95 (11th Cir. 2011).  We review to ensure that the District Court committed no significant procedural error, such as (1) improperly calculating Tolley's sentencing range, (2) treating the Guidelines as mandatory, (3) failing to consider the 18 U.S.C. § 3553(a) factors, (4) selecting the sentence based on clearly erroneous facts, or (5) failing to adequately explain the chosen sentence.  *United States v. Gall*, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007).

"A finding that a defendant has obstructed justice pursuant to U.S.S.G. § 3C1.1 is a factual determination" this Court will overturn only if the finding is clearly erroneous.  *United States v. Callahan*, 981 F.2d 491, 496 (11th Cir. 1993). We review *de novo* the District Court's conclusion that Tolley's conduct justifies the abuse-of-trust enhancement.  *United States v. Ghertler*, 605 F.3d 1256, 1264 (11th Cir. 2010).

We will consider separately the two challenged sentencing enhancements.

## A.

Section 3C1.1 of the United States Sentencing Guidelines provides for a two-level sentence enhancement if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the

8

investigation, prosecution, or sentencing of the instant offense of conviction" and the obstruction related to "the defendant's offense of conviction and any relevant conduct." Sentencing Commission, *Guidelines Manual*, § 3C1.1 (Nov. 1, 2016). "[P]roducing or attempting to produce a false, altered, or counterfeit document or record during an official investigation or judicial proceedings" is considered obstruction of justice. *Callahan*, 981 F.2d at 496 (quotation omitted); U.S.S.G. § 3C1.1, cmt. n.4(C). Submitting a false document during discovery can result in an enhancement for obstruction of justice. *See Callahan*, 981 F.2d at 496.

Here, the District Court applied the obstruction-of-justice enhancement because it found that Tolley produced forged emails to the Government during discovery. Tolley argues the enhancement is inapplicable because the Government never introduced or mentioned the emails at trial, and he relies on *Callahan* for support.

In *Callahan*, the defendant produced a document during discovery that purported to be a written agreement between himself and the IRS. 981 F.2d at 494. At trial, the Government introduced the document and showed that it was not what the defendant claimed it was. *Id.* Tolley relies on one sentence from the *Callahan* opinion to support his argument that a false document must be introduced at trial to provide the basis for an obstruction-of-justice enhancement: "The evidence introduced by the government at trial showing that the contract could not have

9

been signed and executed when Callahan claimed it was . . . provided a sufficient basis on which to make a two-level enhancement under § 3C1.1." *Id.* at 496–97. But the Court was highlighting that the Government showed the document was false—the point was not that the document was introduced at trial.  As we explained, "The enhancement was based on Callahan's *production, during discovery, of the document*." *Id.* at 496 (emphasis added).  We do not read *Callahan* as standing for the proposition that an obstruction-of-justice enhancement is proper only when the underlying false document was introduced at trial.  Nor do the Guidelines have any introduced-at-trial requirement.  *See* U.S.S.G. § 3C1.1, cmt. n.4(C).

The District Court's finding that Tolley obstructed justice was not clearly erroneous.

### B.

Section 3B1.3 of the Guidelines provides for a two-level sentence enhancement if the defendant "abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense."  U.S.S.G. § 3B1.3.  The abuse-of-trust enhancement applies in the fraud context "where the defendant is in a fiduciary, or other personal trust, relationship to the victim of the fraud, and the defendant takes advantage of the relationship to perpetrate or conceal the offense."  *Ghertler*, 605 F.3d at 1264 (quoting *United*

10

*States v. Williams*, 527 F.3d 1235, 1250 (11th Cir. 2008)).  The question of whether the defendant held "a position of trust is extremely fact sensitive." *Id.* (quoting *United States v. Louis*, 559 F.3d 1220, 1225 (11th Cir. 2009)).  For the abuse-of-trust enhancement to apply, there must be evidence that the victim (here, PartsBase) entrusted the defendant with discretionary authority.  *Williams*, 527 F.3d at 1250.

Here, the District Court applied the abuse-of-trust enhancement because it found that Tolley's positions as president and chief information officer allowed him to request the funds in PartsBase's budget from which he later requested reimbursement.  The District Court also found that PartsBase relied on Tolley—the employee trusted to get the data from the government agencies—to say how much it would actually cost to get that data.

Tolley argues the enhancement does not apply because he did not write checks or keep records for PartsBase.  He claims this is a run-of-the-mill fraud case because he was given no discretionary authority.  We disagree.

Before using FOIA requests, PartsBase would pay a third party for the government procurement data it needed.  Tolley, the person in charge of all technology at the company, recommended to PartsBase's owner that PartsBase instead get the government data by using FOIA requests.  PartsBase's owner was unaware of exactly how Tolley would get the government data and make it

11

available to PartsBase's customers.  Tolley called his process a "recipe," and PartsBase's owner left the details to Tolley.

After PartsBase switched from paying a third party to making FOIA requests, Tolley provided a projected budget for how much the FOIA requests would cost.  PartsBase's chief financial officer then made sure the company had enough money available to cover the FOIA-related expenses.  Tolley's budget continually increased, and PartsBase's owner never questioned Tolley's explanations for why this happened.  Remember, no one else at PartsBase knew the details of Tolley's "recipe."  Of course, this means Tolley had discretion to execute the FOIA-request process as he saw fit.  This allowed him to make legitimate FOIA requests, learn the names of the actual government employees who handled requests for different agencies, and then use those names to forge the documents he used to support his fraudulent expenses.  *See* U.S.S.G. § 3B1.3, cmt. n.2(B) (explaining the abuse-of-trust enhancement shall apply when a defendant abuses the authority of his position to misuse "any means of identification"[1]).

Because Tolley had to submit reimbursement requests for approval, he claims his fraud scheme went undetected because the approving employees failed to supervise him.  But as the discussion above makes clear, Tolley used his

---

[1] "Means of identification" is defined as "any name . . . that may be used, alone or in conjunction with any other information, to identify a specific individual."  18 U.S.C. § 1028(d)(7).

position of trust—the only employee trusted with knowing the details of his "recipe"—to conceal the fraud.  Thus, the District Court did not err in applying the abuse-of-trust enhancement.

### III.

The district court must impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" set out in 18 U.S.C. § 3553(a)(2). *See* 18 U.S.C. § 3553(a).  This Court reviews the reasonableness of a sentence for abuse of discretion.  *Gall*, 552 U.S. at 41, 128 S. Ct. at 591.  The weight given to any specific § 3553(a) factor is "committed to the sound discretion of the district court."  *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007) (quotation omitted).  Although we do not presume that a sentence falling within the Guidelines range is reasonable, "we 'ordinarily . . . expect a sentence within the Guidelines range to be reasonable.'"  *United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008) (alteration in original) (quoting *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005)).

Here, the District Court calculated the Guidelines range at 97 to 121 months, with a mandatory, consecutive 24-month sentence for the aggravated identify theft conviction.[2]  Tolley asked for the minimum sentence, while the Government requested a 145-month sentence.  The District Court considered the § 3553(a)

---

[2] Tolley does not challenge the calculation.

13

factors and sentenced him to 84 months' imprisonment under the Guidelines—a 13-month downward variance—in addition to the 24 months' imprisonment that were mandatory.  The District Court explained that it varied downward based on Tolley's lack of criminal history and his positive impact on his community.  The District Court concluded "a great variance" was inappropriate because Tolley stole "a lot of money."  The District Court also noted that he tried to cover up his conduct to find a dishonest way out.

Tolley argues that his sentence is substantively unreasonable because the District Court should have granted a larger downward variance.  Really, Tolley is asking us to reweigh the § 3553(a) factors.  But that is left to the sound discretion of the District Court, and, after considering the § 3553(a) factors at length, the District Court did not abuse its discretion here.

## IV.

We reject Tolley's evidentiary challenges and affirm his sentence.

**AFFIRMED.**